# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Scott*, 2011 IL App (1st) 100122

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK SCOTT, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-0122 |
| Filed | September 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for first degree murder, the trial court properly dismissed defendant's postconviction petition alleging that his trial counsel was ineffective in failing to seek DNA testing of a shirt allegedly worn by the offender and failing to investigate surprise identification testimony and also alleging that his appellate counsel was ineffective in failing to raise the ineffectiveness of trial counsel and to challenge the sufficiency of the evidence; however, defendant's motion for DNA testing was remanded for a ruling on the motion. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-CR-17932; the Hon. Thomas V. Gainer, Jr., Judge, presiding. |
| Judgment | Affirmed in part; remanded in part. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Rachel M. Kindstrand, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary Needham, and Eve Reilly, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Garcia concurred in the judgment and opinion.
Justice R. Gordon specially concurred, with opinion.

**OPINION**

¶ 1    Defendant Mark Scott appeals the first-stage dismissal of his postconviction petition, arguing that the trial court erred in finding the petition to be frivolous and patently without merit because he raised the gist of a meritorious claim of ineffective assistance of trial counsel and appellate counsel. Specifically, defendant contends that his trial counsel was ineffective for failing to pursue DNA testing on a blue shirt purportedly worn by the offender and for failing to investigate the surprise identification testimony from Officer Joseph Seinitz; further, appellate counsel was ineffective for failing to raise these claims of ineffective assistance of trial counsel and for failing to challenge the sufficiency of the evidence on direct appeal. Defendant also asks this court to remand his motion for DNA testing to the circuit court for a ruling or further testing.

¶ 2    Defendant was charged with the July 2003 shooting death of LaQuinn Cornell. Prior to trial, defendant filed a motion to suppress identification based on an overly suggestive showup. At the hearing on defendant's motion, the trial court heard testimony from Yvonne Sanders and Talisha Sanders. Both women witnessed the shooting at 39th Street and King Drive on July 19, 2003. After the shooting, the women were taken to a police station and asked to view a suspect. They were placed in a room with two-sided glass and each viewed two different men, one at a time. Yvonne identified defendant as the shooter and noted that he was wearing a white shirt with a blue shirt draped over his shoulders. Talisha did not identify either of the men, but recognized the blue shirt as the one worn by the offender. The trial court found defendant had met his burden of establishing the pretrial identification procedure was unnecessarily suggestive and afforded the State the opportunity to present evidence to show an independent basis for the reliability of the identifications.

¶ 3    The State recalled Yvonne and Talisha. Yvonne testified that at approximately 7:45 p.m. on July 19, 2003, she was outside a restaurant at 39th and King Drive and talking to LaQuinn Cornell between both of their vehicles. While they were talking, Yvonne saw a man with a gun walk up to them. The man stood a few feet from Yvonne. She said he was wearing a blue shirt and blue khaki pants and she described him as having dark, short hair with a dark

-2-

complexion. She stated that he was around 5 feet 7 inches and weighed between 180 and 200 pounds. Yvonne watched the man while he was shooting and at one point, the man looked her in the face. Yvonne had never seen this person before the shooting. After he finished shooting, the man ran from the scene while Yvonne called 911 and gave a description to the operator. Approximately 20 minutes later, Yvonne was taken to the police station for a showup where she identified the man she saw shoot Cornell. On cross-examination, Yvonne testified that she saw the shooter for approximately 30 to 40 seconds. She said she stood frozen while the shooting occurred. She initially took one step back, but stopped because she did not want to draw attention to herself.

¶ 4       Talisha testified that she was a passenger in her aunt Yvonne's car at approximately 7:45 p.m. on July 19, 2003, and was with her two-year-old nephew in the front passenger seat. While she was sitting in the car, she heard gunshots. She turned toward the sound of the gunshots, but only saw the shooter's face for a split second before she ducked down with her nephew in the car. She stated that the shooter was wearing a blue shirt and was a dark-complected black man. She described the gun as big, shiny and silver. On cross-examination, Talisha testified that she did not see Yvonne when she turned toward the sound of the gunshots. Defendant's attorney impeached Talisha with her grand jury testimony in which she stated that Yvonne was ducking down behind the car during the shooting, but Talisha testified that she did not remember giving that testimony.

¶ 5       The trial court denied defendant's motion to suppress the identification, finding that the suggestiveness of the showup procedure did not affect the reliability of the identifications.

¶ 6       Yvonne and Talisha gave substantially similar testimony at defendant's December 2005 jury trial.

¶ 7       Officers Robert Stegmiller and Joseph Seinitz testified that they were on duty together with Officer Andrew Schoeff the night of July 19, 2003. Officer Seinitz was driving the unmarked patrol car while Officer Schoeff was in the passenger seat and Officer Stegmiller was in the backseat. While the officers' car was at a traffic light at 39th Street and Martin Luther King Drive, they heard five to six gunshots that sounded very close. They looked in the direction of the gunshots and saw glass blowing out of the passenger side window of a van. They observed defendant running with a gun in his hand from beside the van toward an alley that runs between 39th Street and 40th Street. Officer Seinitz recognized defendant from the neighborhood and testified that he had known defendant for about nine years. Officer Seinitz testified that when he saw defendant running, defendant was wearing a blue shirt. Officer Stegmiller stated that he saw defendant wearing a white shirt.

¶ 8       The officers observed a red Chrysler Concord waiting in the alley with the passenger door open. Defendant got into the car and the car drove off at a high rate of speed. The officers followed the red car on a high speed chase for about 10 minutes. Eventually, the car slowed down to about 20 miles per hour and defendant jumped out of the car. The officers chased defendant and placed him under arrest. At the time of his arrest, defendant was not wearing a blue shirt. The driver of the car was later arrested when his car crashed into another vehicle. Back at the scene, Officer Seinitz was handed a blue shirt from a patrol officer.

¶ 9       Roscoe Bryson testified that on July 19, 2003, he was coming home from a blues festival

when he stopped to urinate in the alley between 39th Street and 40th Street. In the alley, Bryson found a nickel-plated Colt 45 revolver. Bryson took the gun home and placed it in his mattress. About a week later, the police came to Bryson's home on an unrelated domestic battery call and Bryson gave the gun to the police. He later showed the police where he found the gun.

¶ 10    A firearms expert examined the gun found by Bryson with cartridge casings and bullet fragments from the scene and concluded that the bullets were fired by that gun. A gunshot residue test was administered to defendant, but the results were not sufficient to establish that defendant had fired a gun. Additionally, fingerprints were recovered from Cornell's van, but they did not match defendant's fingerprints. During a search of the red Chrysler Concord, police found nine clear plastic bags of crack cocaine hidden underneath the shift handle. The medical examiner testified that Cornell's body had a total of five entrance and exit wounds and there was no evidence of close-range firing. The cause of death was multiple gunshot wounds and the manner of death was homicide.

¶ 11    Joe Duckett testified for the defense. He stated that between 7:30 p.m. and 8:30 p.m. on July 19, 2003, he was in a car at 39th Street and King Drive. He heard three shots and turned in the direction of the shots. He saw a man standing with his hand inside the driver's side of a van shooting the driver at point-blank range with what Duckett described as a .38-caliber snub-nosed revolver. Duckett stated that he did not see a woman standing in the parking lot. He also said he saw a marked police car drive past the shooting without stopping. He testified that he went to a gas station and called a friend, who told him to return to the scene. He went back to the scene and told police he had witnessed the shooting.

¶ 12    Duckett testified that he went to the Area One police station and was interviewed by detectives. He described the shooter as about 5 feet 10 inches, with a medium brown complexion, "nappy curls," about 20 to 26 years old, and wearing an aqua T-shirt and faded jeans. He viewed two individuals and told police that neither of them was the shooter. Duckett said he got into an argument with the detectives after he told them that neither of the men was the shooter. On cross-examination, Duckett admitted that the murder weapon was not a snub-nosed revolver.

¶ 13    Detective Brian Forberg testified as a rebuttal witness for the State. He said he spoke to Duckett the night of the shooting and Duckett told him that the shooter used a .32-caliber snub-nosed revolver. Detective Forberg stated that he left Duckett in an office while he made arrangements for him to view a lineup, but when he returned to the office, Duckett was gone. Detective Forberg said he never saw Duckett again that night. Detective Forberg and his partner, Detective John Foster, both testified that Duckett was never brought into a room to view two people and was never shown defendant, and they never got into an argument with Duckett.

¶ 14    Following deliberations, the jury found defendant guilty of first degree murder and found that defendant personally discharged a firearm that proximately caused someone's death. Subsequently, defendant was sentenced to a term of 45 years for the murder and an additional term of 45 years for the handgun enhancement, for a total of 90 years.

¶ 15    On direct appeal, defendant argued that the trial court erred in denying his motion to

suppress the identification because the showup was unnecessarily suggestive and Yvonne's identification did not have a reliable basis for identifying defendant independent from the suggestive showup. This court affirmed the trial court's denial of the motion to suppress the identification. See *People v. Scott*, No. 1-06-2664 (2008) (unpublished order under Supreme Court Rule 23).

¶ 16    In August 2009, defendant filed his *pro se* postconviction petition and a motion for DNA testing of the blue shirt. However, the motion for DNA testing contained in the record was not file-stamped by the circuit court.

¶ 17    In his postconviction petition, defendant raised numerous issues, including actual innocence, prosecutorial misconduct, and claims of ineffective assistance of trial and appellate counsel. Among those claims, defendant asserted that his trial counsel was ineffective for failing to obtain DNA testing on the blue shirt and for failing to request a continuance to investigate after Officer Seinitz testified that he recognized defendant based on his prior interactions in the neighborhood, while his appellate counsel was ineffective for failing to raise these claims of ineffective assistance of trial counsel on direct appeal and for failing to challenge the sufficiency of the evidence on direct appeal.

¶ 18    In November 2009, the trial court summarily dismissed defendant's postconviction petition in a written order. The trial court found that defense counsel's decision not to file a motion for DNA testing was a matter of trial strategy and if a successful motion for DNA testing had been filed, it would not have impacted, altered or changed the trial. The court also found defendant's claim that his trial counsel should have investigated Officer Seinitz's testimony to be without merit because an investigation would not have changed Officer Seinitz's testimony and any impeachment would not have affected defendant's trial. Further, the court noted that the previous interactions between Officer Seinitz and defendant involved defendant's criminal history and it would have been "unwise" for his trial counsel to raise the issue of defendant's criminal history. As for defendant's claim of ineffective assistance of appellate counsel, the trial court found that since it had determined that the underlying claims lacked merit, appellate counsel was not ineffective for failing to raise them on direct appeal. The court also concluded that appellate counsel was not ineffective for failing to raise the State's failure to prove defendant guilty beyond a reasonable doubt because the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

¶ 19    This appeal followed.

¶ 20    On appeal, defendant argues that the trial court erred in summarily dismissing his postconviction petition as frivolous and patently without merit because he raised arguable claims of ineffective assistance of trial and appellate counsel. Defendant also asks this court to remand the case to the trial court for a ruling on defendant's motion for DNA testing or to grant defendant's motion outright.

¶ 21    The Illinois Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1 through 122-8 (West 2008)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2008); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is

limited to constitutional deprivations that occurred at the original trial. *Coleman*, 183 Ill. 2d at 380. "A proceeding brought under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999). "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Thus, *res judicata* bars consideration of issues that were raised and decided on direct appeal, and issues that could have been presented on direct appeal, but were not, are considered forfeited. *People v. Blair*, 215 Ill. 2d 427, 443-47 (2005); *Barrow*, 195 Ill. 2d at 519. The standard of review for dismissal of a postconviction petition is *de novo*. *Coleman*, 183 Ill. 2d at 389.

¶ 22    At the first stage, the circuit court must independently review the postconviction petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2002). A petition is frivolous or patently without merit only if it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis in law or fact if it is "based on an indisputably meritless legal theory," such as one that is "completely contradicted by the record," or "a fanciful factual allegation," including "those which are fantastic or delusional." *Hodges*, 234 Ill. 2d at 16-17.

¶ 23    If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2002). At the dismissal stage of a postconviction proceeding, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief under the Act. *Coleman*, 183 Ill. 2d at 380. At this stage, the circuit court is not permitted to engage in any fact-finding or credibility determinations, as all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true. *Coleman*, 183 Ill. 2d at 385.

¶ 24    The "gist" standard is a low threshold. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To set forth the "gist" of a constitutional claim, the postconviction petition need only present a limited amount of detail and hence need not set forth the claim in its entirety. Further, the petition need not include legal arguments or citations to legal authority. *Edwards*, 197 Ill. 2d at 244. However, the supreme court in *Hodges* clarified that "gist" does not refer to the legal standard used in our review. "[O]ur use of the term 'gist' describes what the defendant must allege at the first stage; it is not the legal standard used by the circuit court to evaluate the petition, under section 122-2.1 of the Act, which deals with summary dismissals. Under that section, the 'gist' of the constitutional claim alleged by the defendant is to be viewed within the framework of the 'frivolous or *** patently without merit' test." *Hodges*, 234 Ill. 2d at 11.

¶ 25    If the circuit court does not dismiss the postconviction petition as frivolous or patently without merit, then the petition advances to the second stage. Counsel is appointed to represent the defendant, if necessary (725 ILCS 5/122-4 (West 2002)), and the State is allowed to file responsive pleadings (725 ILCS 5/122-5 (West 2002)). At this stage, the circuit court must determine whether the petition and any accompanying documentation

make a substantial showing of a constitutional violation. See *Coleman*, 183 Ill. 2d at 381. If no such showing is made, the petition is dismissed. If, however, a substantial showing of a constitutional violation is set forth, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2002).

¶ 26 Defendant contends that the trial court erred in dismissing his postconviction petition because he presented arguable claims of ineffective assistance of trial and appellate counsel.

¶ 27 Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test also applies to claims of ineffective assistance of appellate counsel. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001). In *Strickland*, the Supreme Court delineated a two-part test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment. Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant. *Strickland*, 466 U.S. at 687. To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not ever consider the quality of the attorney's performance. *Strickland*, 466 U.S. at 697.

¶ 28 A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating such failure was objectively unreasonable and that counsel's decision prejudiced defendant. *Rogers*, 197 Ill. 2d at 223. Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Simms*, 192 Ill. 2d 348, 362 (2000). Thus, the inquiry as to prejudice requires that the reviewing court examine the merits of the underlying issue, for a defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal. *Simms*, 192 Ill. 2d at 362. Appellate counsel's choices concerning which issues to pursue are entitled to substantial deference. *Rogers*, 197 Ill. 2d at 223.

¶ 29 At the first stage of postconviction proceedings, a petition alleging ineffective assistance of counsel may not be dismissed if: (1) counsel's performance arguably fell below an objective standard of reasonableness; and (2) the petitioner was arguably prejudiced as a result. *Hodges*, 234 Ill. 2d at 17.

¶ 30 Defendant contends that his trial counsel was ineffective for failing to pursue DNA testing on the blue shirt because the results of the testing were potentially exculpatory. Defendant asserts that the presence or absence of his DNA on the blue shirt is highly relevant to the case as the presence of someone's DNA other than defendant's on the shirt suggests that someone else was the shooter.

¶ 31 However, at this time, defendant cannot establish prejudice under *Strickland*. Any argument regarding exculpatory evidence contained on the blue shirt is speculative. Since no test has been performed, we do not know if sufficient DNA is on the shirt and able to be tested let alone whether the results would be exculpatory. Further, the record shows that the blue shirt was handled by multiple individuals during its recovery and was later placed on defendant's shoulders during a lineup. Without test results, we cannot say whether a reasonable probability exists that the result of defendant's trial would have been different such that defendant was prejudiced. Any opinion would be advisory since at this juncture, no exculpatory evidence exists. Generally, a reviewing court must avoid issuing any advisory opinions. *People v. Hampton*, 225 Ill. 2d 238, 245 (2007). Accordingly, defendant's claim of ineffective assistance of trial counsel for failure to pursue DNA testing lacks merit. For the same reasons, defendant's claim of ineffective assistance of appellate counsel fails as well.

¶ 32 However, defendant may pursue a successive postconviction petition to advance a claim of ineffective assistance of trial counsel based on any DNA test results if he can meet the cause and prejudice test. See 725 ILCS 5/122-1(f) (West 2010).

¶ 33 Next, defendant asserts that his trial counsel was ineffective for failing to investigate the surprise identification testimony from Officer Seinitz at trial. Defendant contends that his trial counsel should have requested a continuance in light of the State's violation of Supreme Court Rule 412 (Ill. S. Ct. R. 412 (eff. Mar. 1, 2001)) by failing to disclose an identification witness. Defendant also argues that his appellate counsel was ineffective for failing to raise this claim of ineffective assistance of trial counsel on direct appeal.

¶ 34 At trial, Officer Seinitz testified that he was on duty and near the area of 39th and King Drive when he heard gunshots. He looked toward the sound of the gunshots and saw defendant running from the scene with a gun in his hand. Officer Seinitz stated that he recognized defendant from the neighborhood and had known defendant for nine years. At this point, defendant argues that his trial counsel should have sought a continuance because the State had not previously disclosed Officer Seinitz as an identification witness, a violation of Rule 412. However, the State had disclosed Officer Seinitz as a possible witness.

¶ 35 Supreme Court Rule 412 provides, in relevant part:

> "(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
>
> > (i) the names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements." Ill. S. Ct. R. 412(a)(i) (eff. Mar. 1, 2001).

¶ 36 The supreme court in *People v. Jones*, 153 Ill. 2d 155 (1992), declined to extend the requirements of Rule 412 to include specifications as to the categorization of witnesses. In that case, the defendant's motion for discovery listed a request for witnesses, occurrence

witnesses and identification witnesses, but the State responded with a general list of possible witnesses, naming anyone named in multiple documents including police reports. The defendant argued that this response to his motion did not comply with Rule 412, but the supreme court disagreed. *Jones*, 153 Ill. 2d at 162-63.

> "The rule very specifically delineates the materials which the State must turn over to defense counsel upon request, including the names of possible witnesses. However, nowhere does it indicate that a defendant may demand from the State the categorization that the defendant did here, and the State was under no obligation to provide this breakdown. We reject the invitation to expand the State's discovery obligations to include classification of witnesses in any manner and detail that a defendant's whim might direct. The State satisfied the requirements of the rule." *Jones*, 153 Ill. 2d at 163.

¶ 37 Defendant acknowledges the supreme court's holding in *Jones*, but asserts that Jones was wrongly decided and "is contrary to the spirit of the discovery rules and notions of fundamental fairness." We disagree. Under Rule 412, the State is under no obligation to specify the types of witnesses it may call at trial, including identification witnesses. Moreover, even if we disagreed with the holding in *Jones*, which we do not, we lack the authority to overrule the supreme court's prior holding. "The appellate court lacks authority to overrule decisions of this court, which are binding on all lower courts." *People v. Artis*, 232 Ill. 2d 156, 164 (2009).

¶ 38 Since the State did not violate discovery, trial counsel had no basis to request a continuance. Further, trial counsel engaged in effective representation regarding Officer Seinitz's testimony. Immediately after Officer Seinitz identified defendant, trial counsel requested a sidebar and the parties discussed the basis of Officer Seinitz's recognition of defendant. The prosecutor indicated that the officer knew defendant from the neighborhood because defendant was in a gang and the officer had had previous interactions with defendant's associates. The trial court limited the basis of Officer Seinitz's knowledge to statements that he knew defendant from the neighborhood.

¶ 39 On cross-examination, counsel questioned Officer Seinitz about his identification of defendant as the person running from the scene. He asked why the identification was not contained in his signed police reports. Counsel also asked Officer Seinitz about the fact that the officer did not see the shots being fired. Defense counsel questioned Officer Seinitz about his view of the scene and how his recollection differed from the other officers. Trial counsel properly cross-examined Officer Seinitz about his identification testimony and challenged the officer's recollection. Defendant contends that his attorney did not question Officer Seinitz about his prior interactions with defendant over nine years, but as the prosecutor noted in the sidebar, such questions would have elicited responses involving defendant's criminal history and gang membership. His attorney wisely opted not to ask questions that would have harmed defendant. Under these circumstances, we conclude that defendant's trial counsel was not ineffective for failing to investigate Officer Seinitz's identification testimony. The State did not violate discovery rules and defense counsel effectively cross-examined Officer Seinitz about his identification and what he witnessed in regard to the shooting. Accordingly, this claim of ineffective assistance of trial counsel fails. Because trial

counsel was not ineffective, appellate counsel was not ineffective for failing to raise this claim on direct appeal.

¶ 40    Finally, defendant argues that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence in his direct appeal.

¶ 41    A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating such failure was objectively unreasonable and that counsel's decision prejudiced defendant. *Rogers*, 197 Ill. 2d at 223. Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Simms*, 192 Ill. 2d 348, 362 (2000). Thus, the inquiry as to prejudice requires that the reviewing court examine the merits of the underlying issue, for a defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal. *Simms*, 192 Ill. 2d at 362. Appellate counsel's choices concerning which issues to pursue are entitled to substantial deference. *Rogers*, 197 Ill. 2d at 223.

¶ 42    Defendant contends that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal because he had a meritorious claim that the State did not prove him guilty of murder beyond a reasonable doubt. The State maintains that there is no merit to this claim of ineffective assistance of appellate counsel because a rational trier of fact could have found defendant guilty of murder.

¶ 43    When this court considers a challenge to a criminal conviction based upon the sufficiency of the evidence, it is not our function to retry the defendant. *People v. Hall*, 194 Ill. 2d 305, 329-30 (2000). Rather, our inquiry is limited to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); accord *People v. Cox*, 195 Ill. 2d 378, 387 (2001). It is the responsibility of the trier of fact to "fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

¶ 44    The reviewing court must carefully examine the record evidence while bearing in mind that it was the fact finder who saw and heard the witnesses. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Testimony may be found insufficient under the *Jackson* standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt. *Cunningham*, 212 Ill. 2d at 280. However, the fact a judge or jury did accept testimony does not guarantee it was reasonable to do so. Reasonable people may on occasion act unreasonably. Therefore, the fact finder's decision to accept testimony is entitled to great deference but is not conclusive and does not bind the reviewing court. *Cunningham*, 212 Ill. 2d at 280. Only where the evidence is so improbable or unsatisfactory as to create reasonable doubt of the defendant's guilt will a conviction be set aside. *Hall*, 194 Ill. 2d at 330.

¶ 45    Here, the evidence at trial was sufficient to prove defendant guilty beyond a reasonable doubt of first degree murder. Yvonne testified that she was standing next to Cornell and they

were engaged in a conversation when defendant walked up and shot Cornell multiple times. Yvonne stated that she stood still in shock and looked directly at defendant. She immediately called police and reported the shooting. Officers Seinitz, Stegmiller and Schoeff were stopped at the intersection of 39th and King Drive when they heard gunshots. Officer Seinitz looked in the direction of the gunshots and saw glass shattering in a van. He saw a man running from the scene, and he was in a blue shirt and carrying a gun. Officer Seinitz recognized the man as defendant, whom he knew previously from the neighborhood. The officers drove toward defendant and observed him get into a red Chrysler Concord. The officers then followed the red car and a police chase continued. Eventually, the car slowed and defendant jumped from the car. After a foot chase, defendant was arrested. The driver of the red car was also arrested after he crashed his car. The gun used in the shooting was found in the alley between 39th and 40th. The police recovered the weapon from Roscoe Bryson during an unrelated domestic dispute.

¶ 46    In defense, defendant presented the testimony of Joe Duckett. Duckett testified that he saw the shooting and defendant was not the offender. He stated that he viewed a lineup and told the police that defendant was not the shooter. The officers told him to go home and they would contact him, but Duckett was not contacted. However, the State presented rebuttal testimony from Detective Forberg. Detective Forberg stated Duckett never viewed a lineup. Further, he stated that Duckett was placed in an interview room for an hour while the investigation continued. When the detective returned to the room, Duckett was gone.

¶ 47    After viewing the evidence presented in the light most favorable to the prosecution, we find that a rational trier of fact could have found defendant guilty beyond a reasonable doubt. Eyewitnesses identified defendant as the shooter and defendant was seen fleeing the crime scene. Defendant was arrested immediately after the crime after a chase. Though defendant contends that the absence of forensic evidence supports his claim, we disagree. The jury at defendant's trial heard the witness testimony as well as the forensic evidence. It was the jury's responsibility to consider the evidence presented at trial, and we will not substitute our judgment for the jury's finding. The State presented sufficient evidence to prove defendant guilty of first degree murder beyond a reasonable doubt and appellate counsel was not ineffective for failing to raise this nonmeritorious issue on direct appeal. Therefore, defendant's claim of ineffective assistance of appellate counsel fails.

¶ 48    Finally, we consider the issue of defendant's motion for DNA testing. In his filing with the trial court, defendant included a "Motion for Forensic Testing DNA" between his more than 50-page *pro se* postconviction petition and his unsworn affidavit in support of his postconviction petition. This motion was not file-stamped by the clerk of the circuit court. In his motion, defendant requested "DNA testing that would exonorate [*sic*]" defendant by testing the blue shirt recovered near the crime scene and introduced at trial. Though defendant does not refer to the statute providing for the filing of a motion for DNA testing, we recognize that a defendant may file a motion for forensic testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2008)). We note that a section 116-3 motion for DNA testing "seeks to initiate a separate proceeding, independent of any claim for post-conviction or other relief." *People v. Savory*, 197 Ill. 2d 203, 210 (2001).

¶ 49　　　However, the trial court did not specifically reference this motion in its written order dismissing defendant's postconviction petition. The trial court did refer to the blue shirt and DNA testing in its analysis of defendant's claims of actual innocence, which was abandoned on appeal, and ineffective assistance of trial counsel. It is unclear to this court if the trial court denied defendant's motion for DNA testing or simply did not rule at all. In its order, the court found that the results of a DNA test on the blue shirt would not constitute newly discovered evidence to support a claim of actual innocence because the T-shirt and the procedure were available to defendant at the time of trial. Since we cannot ascertain a clear ruling by the trial court on defendant's motion for DNA testing, we remand this case to the trial court for the limited purpose of conducting a hearing on defendant's *pro se* motion for DNA testing.

¶ 50　　　Based on the foregoing reasons, we affirm the trial court's dismissal of defendant's *pro se* postconviction petition and remand defendant's motion for DNA testing, attached to his postconviction petition, for a hearing in the trial court.

¶ 51　　　Affirmed in part; remanded in part.

¶ 52　　　JUSTICE ROBERT E. GORDON, specially concurring:

¶ 53　　　I concur in affirming the dismissal of defendant's postconviction petition and in remanding the case to the trial court for a decision on the DNA motion. However, I must write separately for two reasons.

¶ 54　　　First, unlike the majority, I find that the trial court decided defendant's DNA motion and that, in deciding the motion, applied the wrong legal standard. Thus, I would remand the DNA motion to the trial court for the purpose of making a determination utilizing the correct standard, which is set forth in section II of this concurrence.

¶ 55　　　Second, unlike the majority, I find that it is premature to decide defendant's claim of ineffective assistance of counsel on the DNA issue, until there is a ruling on the need for DNA testing and, if needed, after the DNA testing is conducted and the results are conveyed to defendant. Although I would affirm the dismissal of defendant's postconviction petition, I would find only that it lacks merit at this time and refrain from issuing an advisory opinion on counsel's effectiveness or resulting prejudice on the DNA issue. If the DNA results are helpful to defendant, he can file a successive postconviction petition.

¶ 56　　　　　　　　　　　　　　I. State's Arguments

¶ 57　　　The State argues that we lack the jurisdiction to rule on defendant's DNA motion because: (1) it was not file-stamped; (2) the trial court did not issue a separate order on the need for DNA testing; and (3) defendant's notice of appeal did not specifically mention the DNA motion. For the following reasons, I do not find these factual arguments persuasive.

¶ 58　　　　　　　　　　　　　　A. File-Stamped

¶ 59　　　I find that the evidence in the record supports the conclusion that the DNA motion was

filed in the trial court.

¶ 60    First, defendant's "Verified Petition," which was file-stamped, repeatedly asked the trial court to: "See DNA motion." These statements support the conclusion that the motion was attached to the petition.

¶ 61    Second, although the DNA motion was not separately file-stamped, neither were two other documents that were apparently also attached to the petition. These documents were a complaint from another case and defendant's affidavit in support of his postconviction petition.

¶ 62    Third, the order of the documents as they appear in the appellate record supports the conclusion that the DNA motion was filed with the file-stamped petition. The DNA motion appears sandwiched between the petition and its supporting affidavit, with the petition on one side and the petition's supporting affidavit on the other side.

¶ 63    Fourth, the trial court could not have reviewed the postconviction petition without the affidavit. Section 122-1 of the Code of Criminal Procedure of 1963 requires the petition to be accompanied by an affidavit which verifies the petition. 725 ILCS 5/122-1(b) (West 2010). As noted, these two documents, which were a statutorily required pair, sandwiched the DNA motion.

¶ 64    Fifth, the DNA motion appears in the official court record which was prepared and certified for our review by the clerk of the circuit court.

¶ 65    Sixth, I cannot find fault with a *pro se* prisoner for mailing his postconviction petition and his DNA motion together.

¶ 66    For all these reasons, I find that the record supports the inescapable conclusion that the DNA motion was filed in the trial court.

¶ 67    In addition and as a separate reason for considering the DNA issue, I observe that defendant's petition made its own request for DNA testing.

¶ 68                              B. Trial Court's Ruling

¶ 69    I also find that the trial court did make a ruling on the need for DNA testing.

¶ 70    First, the trial court's order tracked the organization of defendant's petition. Defendant's petition had two sections. The first section was entitled "I. Actual Innocence" which stated "See DNA motion." The second section was entitled "II. Actual Innocence[–]Perjured Testimony."

¶ 71    Defendant's first section was solely "a request for DNA testing," accompanied by an explanation of what the "DNA tests will reveal" and how these results would prove him innocent. Defendant stated unambiguously that he was "requesting DNA on the Blue T-shirt in question."

¶ 72    Under a heading entitled "issues presented for reversal," defendant's petition listed the issues that he was asking the trial court to decide. The entire description of defendant's primary issue appears below:

"I.

## ACTUAL INNOCENCE

DNA results from the blue T-shirt that was submitted into evidence used to convict Mr. Scott, in that he wore this 'blue shirt,' [people's exhibit #6], during the shooting death of the victim. **(See DNA Motion)"**[1]

¶ 73     Defendant's petition also contained a heading entitled "Arguments of Issues" where he presented the legal arguments supporting the two issues that he had just listed. His first argument begins:

"I. <u>ACTUAL INNOCENCE</u> **(see also motion for dna testing)**

DNA results will reveal that the Blue T-shirt that was submitted as evidence against Mr. Scott, did not belong to Mr. Scott, and as such he never wore that Blue Shirt ***."

In this section, defendant then states: "Mr. Scott is requesting DNA on the Blue T-shirt in question ***."

¶ 74     Just like defendant's petition, the trial court's order had two sections which were both entitled "Actual Innocence." The order's first section, entitled "1. Actual Innocence," explained why DNA testing was not needed. The order's second section, entitled "2. Actual Innocence," discussed defendant's claim of perjured testimony.

¶ 75     Defendant's first section was a request for DNA testing, and the trial court's first section was a response to that request.

¶ 76     However, the trial court collapsed into one issue: defendant's request for DNA testing and his claim of innocence based on what the tests would show. In essence, the trial court ruled that DNA testing was unnecessary because, even with it, any claim of innocence would fail.

¶ 77     We have previously noticed a tendency by trial courts to collapse their ruling into one issue on: a postconviction claim of actual innocence and a motion for postconviction DNA testing. *People v. Henderson*, 343 Ill. App. 3d 1108, 1120 (2003). In *Henderson*, we observed that "the trial court in the instant case essentially held that, assuming that the requested [DNA] testing resulted in a non-match ***, this result would not be materially relevant to the defendant's assertion of actual innocence." *Henderson*, 343 Ill. App. 3d at 1120. Although we expressed concerns in *Henderson* about "a shortcut that 'collapses' the required steps in the inquiry," we still reviewed the trial court's DNA ruling separately, as I would do in the case before us. *Henderson*, 343 Ill. App. 3d at 1120-1121 (reversing the trial court's denial of defendant's request for DNA testing and remanding for testing).

¶ 78     Second, the trial court did, in fact, make a ruling on the need for DNA testing. The trial court held that, even if the blue shirt were tested and it did not contain defendant's DNA and "the court were to take this as meaning that he was not wearing the t-shirt on the night of the shooting," this evidence would not have "enough" of an impact "to change the result of petitioner's trial." Although it would have been the better practice to place this finding in a

---

[1]The underlining and boldface appear in the original, as does the bracketed information.

-14-

separate order, we still have the authority to review it.

¶ 79                                              C. Notice of Appeal

¶ 80       I also find that the notice of appeal was sufficient to give us jurisdiction to review the trial court's finding. The trial court's DNA ruling was contained in a written order which was dated November 25, 2009, and entered on the half-sheet as "PC Petition Dismissed." Defendant's notice of appeal identified this order by its date and described the "nature of [the] order" as the "dismissal of [a] postconviction petition." Thus, the notice adequately identified the order appealed from, and on appeal we have the power to reverse, affirm or modify any part of the "order from which the appeal is taken." Ill. Sup. Ct. R. 615(b).

¶ 81       The State cites *In re V.M.*, 352 Ill. App. 3d 391, 397 (2004), for the proposition that "we acquire no jurisdiction *** to review parts of judgments not specified or fairly inferred from the notice of appeal." However *In re V.M.* is completely distinguishable. Since it was a civil case, we were quoting and interpreting Supreme Court Rule 303, which governs the form and contents of a notice of appeal in civil cases only. *In re V.M.*, 352 Ill. App. 3d at 397; see also Ill. Sup. Ct. R. 303(b)(2) (eff. May 30, 2008). There is a completely different supreme court rule, namely, Supreme Court Rule 606, which governs the form and content of a notice of appeal in criminal cases. Ill. Sup. Ct. R. 606(d) (eff. Mar. 20, 2009).

¶ 82       Supreme Court Rule 303 provides that a civil notice of appeal "shall specify the judgment or *part thereof* or other orders appealed from." (Emphasis added.) Ill. Sup. Ct. R. 303(b)(2) (eff. May 30, 2008). By contrast, this provision does not appear in Supreme Rule 606. In fact, there is not even a space on the Rule 606 form to specify parts of orders. The Rule 606 form asks the defendant to describe the "nature of order" appealed from and only if the appeal is not from a conviction. Ill. Sup. Ct. R. 606(d) (eff. Mar. 20, 2009). The purpose of this requirement is clearly to identify the order at issue, not which part of the order. Thus, I do not find the State's argument persuasive.

¶ 83       In addition, as I noted above, Supreme Court Rule 615, which specifies our "powers" on review in criminal cases, does not speak of parts of orders. Instead, it provides us the authority to review the entire "order from which the appeal is taken." Ill. Sup. Ct. R. 615(b). Thus, I find that we have the authority to review a ruling contained in the November 25, 2009, order named in the notice of appeal.

¶ 84                                              II. Need for Remand

¶ 85       The trial court decided the need for DNA testing based on two grounds: (1) the availability of the procedure at the time of defendant's trial; and (2) the likelihood that the evidence would probably not "change the result of the trial." However, neither of these grounds exists in the current statute.

¶ 86       As for the first ground, the statute was revised in 2007 to eliminate the requirement that "the technology for the testing was not available at the time of the trial." Compare 725 ILCS 5/116-3(a) (West 1998), with 725 ILCS 5/116-3(a) (West 2008). Instead, the statute now permits testing if the evidence "was not subject to the testing which is now requested." 725

ILCS 5/116-3(a)(1) (West 2010). Since the blue shirt was not previously subjected to DNA testing, the prior availability of DNA testing is no longer a bar to defendant's request.

¶ 87    As for the second ground, the statute was specifically amended in 2003 to add that a defendant was entitled to testing "even though the results may not completely exonerate the defendant." Compare 725 ILCS 5/116-3(c)(1) (West 2002), with 725 ILCS 5/116-3(c)(1) (West 2004). Thus, defendant must show that the test is "materially relevant" to his innocence claim, but he does not have to show that the result will probably exonerate him at trial, as the trial court held.

¶ 88    Since the trial court decided the need for DNA testing on these two grounds, it never made a ruling on the other requirements of the statute, which are discussed below.

¶ 89    The current postconviction testing statute requires defendants to make "a prima facie case" that (1) identity was the issue at trial; and (2) the chain of custody has been sufficiently preserved. 725 ILCS 5/116-3(b) (West 2010). After defendant makes this *prima facie* showing, the statute states that the trial court "shall" order the testing if it determines that (1) the test has the potential to produce new, noncumulative and materially relevant evidence; and (2) the test has been "generally accepted within the relevant scientific community." 725 ILCS 5/116-3(c)(1), (c)(2) (West 2010).

¶ 90    Although a reviewing court has the authority to review a DNA motion under a *de novo* standard,[2] I think the better course of action would be to remand to permit briefing before the trial court on the requirements of the current statute and to permit a clear ruling by the trial court. The majority also agrees to the need for a remand, although for different reasons.

¶ 91                    III. Premature to Decide Ineffective Assistance

¶ 92    Where the majority and I part company is that I find that it is premature to evaluate the DNA issue raised by defendant in support of his claim that he was denied an effective assistance of counsel.

¶ 93    Defendant claimed ineffective assistance of trial and appellate counsel on the grounds that counsel failed to pursue the issues of DNA testing, of investigating a surprise identification witness and of challenging the sufficiency of the evidence.

¶ 94    The majority rejected the DNA ground, finding that he could not establish prejudice at this time, without the results of testing on the blue shirt. Since counsel's performance, and any resulting prejudice, must be analyzed in terms of the entire record, I find that we would be issuing a merely advisory opinion in the absence of a DNA ruling. Thus, I would find only that his petition lacks merit at this time and refrain from issuing an advisory opinion until the DNA issue has been conclusively resolved. As the majority points out, defendant can file a

---

[2]The DNA postconviction statute requires a trial court to allow postconviction DNA testing if the defendant can make out "a prima facie case" for such testing. 725 ILCS 5/116-3(b) (West 2010). Because a trial court's ruling on a motion for postconviction DNA testing is not based on an assessment of the credibility of witnesses but on its review of the pleadings and trial transcripts, this court applies a *de novo* standard of review. *Henderson*, 343 Ill. App. 3d at 1115.

successive postconviction petition. *Cf. Henderson*, 343 Ill. App. 3d at 1121 ("the factors" to be considered in a claim of actual innocence are "really more appropriately addressed in postconviction proceedings when the results of the testing may be considered").

¶ 95    As the majority observed, "[a]ny argument regarding exculpatory evidence is \*\*\* speculative. Since no test has been performed, we do not know if sufficient DNA is on the shirt and able to be tested let alone whether the results would be exculpatory. \*\*\* Without test results, we cannot say whether a reasonable probability exists that the result of defendant's trial would have been different such that defendant was prejudiced. Any opinion would be advisory since at this juncture, no exculpatory evidence exists." *Supra* ¶ 31.

¶ 96    I agree completely with the majority when it states that any opinion at this time "would be advisory," and that "a reviewing court must avoid issuing any advisory opinions." *Supra* ¶ 31. The Act permits defendant to pursue a successive postconviction petition to advance a claim based on any test results, including a claim for ineffective assistance of counsel if he can satisfy the cause and prejudice test (725 ILCS 5/122-1(f) (West 2010)) or a claim for actual innocence if he can satisfy the test set forth in *People v. Ortiz*, 235 Ill. 2d 319 (2010). Since the "reasonable probability" of a different result must be examined on the basis of the entire record, I would hesitate to conduct a piecemeal analysis of the DNA issue now which may only come back to haunt us later. In any event, I would find that the majority's assessment today would not bar us from a future assessment of cumulative error, performance or prejudice.

¶ 97                                    IV. Conclusion

¶ 98    For all these reasons, I would find that the trial court decided defendant's DNA motion and that, in deciding the motion, the trial court applied the wrong legal standard. I would reverse the trial court's DNA ruling and remand to the trial court for the purpose of making a determination utilizing the correct standard.

¶ 99    Although I would affirm the dismissal of defendant's postconviction petition, I would find only that it lacks merit at this time and refrain from issuing an advisory or piecemeal opinion.