2014 IL App (1st) 120089

FIFTH DIVISION
March 21, 2014

No. 1-12-0089
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 3228 |
| | ) | |
| JERMAINE ROSS, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Palmer concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant Jermaine Ross was convicted of being an armed habitual criminal and sentenced to 80 months' in the Illinois Department of Corrections (IDOC). We affirmed on direct appeal, where we found that the evidence was sufficient to show that the defendant had constructive possession of a handgun found in plain view behind the driver's seat of a vehicle he had been driving which supported a conviction for being an armed habitual criminal. *People v. Ross*, 407 Ill. App. 3d 931 (2011).   Defendant now appeals from the summary dismissal of his *pro se* postconviction petition at the first stage, contending that he raised two claims of arguable merit.   First, he contends that he was actually innocent based on an affidavit from his son

who claims that the son actually committed the offense, or that trial counsel was ineffective for not properly presenting the son's affidavit into evidence or for not raising it.   Second, he contends that IDOC increased his sentence without authority by imposing a term of mandatory supervised release (MSR) not imposed by the trial court.

¶ 2                                      BACKGROUND

¶ 3                              I. State's Case In Chief

¶ 4      Police officer Conray Jones, a 16-year veteran of the Chicago police department, testified that he was with his partner, Officer Seaberry, in a marked police vehicle when he observed Sylvester Tatum walking toward defendant's vehicle stopped along the curb on West End Avenue near Central Avenue. The police vehicle was 20 to 30 feet from the rear of defendant's vehicle when Jones heard Tatum say "rocks and blows" to defendant, who was stopped with his vehicle running, window opened, sitting in the driver's side of the vehicle with no passengers. The officer knew that "rocks and blows" was street talk for cocaine and heroin. When Tatum noticed the police vehicle, he walked away from the parked auto. Defendant then exited the vehicle, leaving the auto running. The officers detained defendant and Tatum. Officer Seaberry walked to the stopped vehicle and returned with a .40-caliber handgun with 10 live rounds. The officers then placed defendant under arrest.

¶ 5      Officer Jones's partner, Officer Seaberry, also testified that he heard Tatum say something like "rocks and blows" as they eased behind defendant's vehicle. Officer Seaberry's testimony corroborated the testimony of Officer Jones. After the police detained Tatum and defendant,

Officer Seaberry walked over to defendant's vehicle, which was still running. While standing outside the vehicle, he observed the butt of a gun on the floor of the backseat, behind the driver's side, next to and partially under a black bag. Officer Seaberry testified that he made this observation from outside the vehicle when the back door was closed. After the State presented certified copies of defendant's convictions for delivery of a controlled substance, it rested its case.

¶ 6                                    II. Defense Case

¶ 7     The defense called Elizabeth Gomez, defendant's girlfriend, who testified that the vehicle belonged to her. On the morning of defendant's arrest, defendant dropped her off at work at about 9:50 a.m. and at that point in time the only item in the backseat of her vehicle was an infant car seat.

¶ 8     Defendant also testified on his own behalf that when he drove Gomez's vehicle, the only item in the backseat was the infant car seat and he denied having a gun in his possession. Defendant testified that, after he dropped off Gomez, he picked up his friend, Tyrone Patterson, and then he observed his teenage son, Jemal, on Central Avenue. Defendant stopped and told Jemal that he would be stopping a block away.

¶ 9     When defendant turned onto West End Avenue, he observed Tatum and another friend. Defendant stopped and parked the vehicle and walked across the street to talk to Tatum. Then, an unmarked police vehicle arrived, and a detective told defendant to move his vehicle because it was parked illegally. The unmarked police vehicle then left the area. Defendant then asked his friend Patterson to move the vehicle, and defendant's son Jemal approached. Then, a marked police

vehicle arrived with Officers Jones and Seaberry.

¶ 10    Patterson also testified for the defense and corroborated most of defendant's testimony. However, he testified that, after he exited the vehicle after parking it, he was walking toward defendant when Jemal arrived. He observed Jemal walk toward the vehicle, open the back door and place a gun under the seat. As Patterson began to tell defendant what Jemal had done, the police arrived and detained everyone, which included defendant, Tatum, Patterson, and Jemal. Patterson had three prior felony convictions and was on parole at the time of his testimony.

¶ 11    The defense also introduced 43 seconds of security camera footage that showed only Officer Seaberry walking to the backseat of the parked vehicle. Defendant testified that the video showed that the vehicle was not running.

¶ 12                                    III. State's Rebuttal Case

¶ 13    In the State's rebuttal case, Officer Jones testified that there were no people in the area other than defendant and Tatum.

¶ 14    Based on this evidence, defendant was found guilty of aggravated unlawful use of a weapon and of being an armed habitual criminal. He was sentenced to 80 months on the armed habitual criminal count, and no sentence was given for the aggravated unlawful use of a weapon count.

¶ 15    In his posttrial motion, defendant argued that his son Jemal was unavailable at trial, because at that point in time he was hospitalized in a coma due to being shot, but since then had awoken and provided an affidavit admitting to placing the gun in the vehicle, so that a new trial

should be given to him. Attached to the motion was a document, signed by Jemal but not notarized, stating that he left the gun under the driver's seat of the vehicle, that he and defendant were taken to the police station, that he admitted at the station that it was his gun but "the police" (not named or described) told him that they were going to charge defendant regarding the gun nonetheless.

¶ 16     At argument on the posttrial motion, the court noted that Jemal's statement was not notarized and thus was not an affidavit. Trial counsel told the court that he had not spoken with Jemal since his shooting, though Jemal gave a similar account earlier before being advised by his mother to remain silent, and suggested that the court subpoena Jemal for an evidentiary hearing. The court noted that, in such a hearing, it would have to advise Jemal of his right to refrain from self-incrimination and provide him an attorney. The court also ascertained from counsel that he had not witnessed Jemal sign the statement, he was not familiar with Jemal's writing, and his investigator who provided the statement was not present in court, so that there was no foundation for admitting the statement into evidence. When the State noted that defendant had demanded trial at arraignment and did not withdraw that demand or seek a continuance, the defense argued that Jemal was available at arraignment but was shot in the face at close range a few days before trial. The State further argued that, after conferring, the defense had concluded as a matter of trial strategy that there was no reason to delay trial "on the off chance that Jemal Ross, who was shot in the face [from] a few feet away, would come out of a coma." The court then denied the posttrial motion.

¶ 17    On direct appeal, we found the evidence sufficient to convict, concluding that the State and defense evidence showed that defendant alone was in possession of the vehicle when the gun was found.   *Ross*, 407 Ill. App. 3d at 935-37.   Gomez's testimony established that there was no gun or bag in the backseat of the vehicle when she left it, so that it is reasonable to infer that the bag and gun were placed in the backseat after she left.   The officers testified that they observed no other person enter or exit the vehicle.   While defendant presented testimony from himself and Patterson that two other persons were in the vehicle in the meantime -- Patterson and Jemal -- Patterson testified to observing Jemal place the gun in the backseat while defendant did not testify to Jemal being inside the vehicle.   Lastly, the evidence that defendant walked away from the vehicle after Tatum observed the police vehicle supports a reasonable inference that defendant had knowledge of the gun's presence.   Defendant's other contentions of error on direct appeal did not include ineffective assistance of trial counsel or any other challenge to the absence of Jemal's testimony.

¶ 18    In his October 2011 *pro se* postconviction petition, defendant alleges that Jemal had been previously arrested by Officer Seaberry contrary to Officer Seaberry's preliminary hearing testimony, that Jemal was unavailable to testify at trial because he had been shot a few days earlier, and that Jemal's posttrial affidavit to trial counsel's investigator was not admitted into evidence by the trial court on the grounds that it was not notarized.   Defendant also alleges that he was not admonished at sentencing regarding the MSR.

¶ 19    Attached to the petition was Jemal's affidavit averring that he is over 18 years old, that he left the gun under the driver's seat of the vehicle, that he and defendant were taken to the police

station, that he admitted to officers that it was his gun but "the police" (again, not named or described) refused to test the gun for fingerprints and told Jemal that they wanted defendant "off the streets" and were going to charge him regardless of Jemal's admission. Jemal further averred that he told the same to trial counsel's staff and was interviewed by an investigator.

¶ 20    In November 2011, the court summarily dismissed the petition. In relevant part, the court found that the substance of Jemal's affidavit had been introduced at trial through Patterson's testimony, which was contradicted by Officer Jones's testimony that nobody but defendant and Tatum was in the area. The court also found that defendant's action of leaving the vehicle showed knowledge of the gun's presence even if Jemal had placed the gun in the vehicle, so that it was not evidence of actual innocence. The court found the MSR claim meritless because defendant did not provide the entire transcript of his sentencing hearing. This timely appeal followed.

¶ 21                              ANALYSIS

¶ 22    On appeal, defendant contends that the summary dismissal of his *pro se* petition was erroneous because he raised two claims of arguable merit: (1) that he was actually innocent based on Jemal's affidavit that he placed the gun in the vehicle just before the police arrived, or that trial counsel was ineffective for not presenting an affidavit from Jemal, or appellate counsel was ineffective for not contending on direct appeal that the trial court erred in not granting a continuance to allow Jemal to testify on the posttrial motion, and (2) that IDOC increased his sentence without authority by imposing an MSR term not imposed by the trial court.

¶ 23    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2004)) enables

criminal defendants to initiate collateral proceedings to challenge prior convictions on grounds of a substantial denial of constitutional rights. *People v. Barrow*, 195 Ill. 2d 506, 518-19 (2001). Proceedings pursuant to the Act that do not involve the death penalty can be viewed as consisting of three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). To survive the first stage, a *pro se* litigant's petition need only present the gist of a constitutional claim. 725 ILCS 5/122-2.1 (West 2004); *People v. Jones*, 213 Ill. 2d 498, 504 (2004). While this is a low threshold (*Jones*, 213 Ill. 2d at 504), the Act allows the trial court to summarily dismiss any petition it finds frivolous or patently without merit. 725 ILCS 5/122-2.1 (West 2004). At the second stage, an indigent petitioner is appointed counsel (725 ILCS 5/122-4 (West 2004)), an amended petition may be filed, and the State is allowed to file responsive pleadings (725 ILCS 5/122-5 (West 2004)). If the trial court determines that the petitioner has made a substantial showing of a constitutional violation, then the petition passes to the third stage, at which the trial court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2004); *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 24     As noted, a petition may be summarily dismissed if it is frivolous or patently without merit. A petition is frivolous or patently without merit only if it has no arguable basis either in law or in fact. *People v. Tate*, 2012 IL 112214, ¶ 9.   A claim has no arguable basis when it is based on an indisputably meritless legal theory (for example, one completely contradicted by the record) or a fanciful factual allegation; that is, an allegation that is fantastic or delusional.   *People v. Brown*, 236 Ill. 2d 175, 185 (2010).   Our review of a summary dismissal is *de novo*.   *Tate*, 2012 IL 112214, ¶ 10.

¶ 25    A petition may raise a freestanding claim of actual innocence based on newly-discovered evidence.   *People v. Ortiz*, 235 Ill. 2d 319, 331 (2009).   Newly discovered evidence warrants retrial only when it is (1) discovered since trial and of such a nature that the defendant exercising due diligence could not have discovered it earlier, (2) material and not merely cumulative, and (3) so conclusive that it will probably change the result on retrial.   *People v. Carter*, 2013 IL App (2d) 110703, ¶ 75.   Evidence is cumulative when it adds nothing to what was already presented to the trier of fact at trial.   *People v. Brown*, 2013 IL App (1st) 091009, ¶ 50.   While claims of newly discovered evidence on postconviction petitions are not looked upon with favor and are closely scrutinized, the new evidence need not establish the defendant's innocence but only that all of the facts and circumstances, including the new evidence, warrant closer scrutiny to determine his guilt or innocence.   *Carter*, 2013 IL App (2d) 110703, ¶ 75.

¶ 26    In his affidavit, Jemal attests that he "placed a 40 caliber handgun w/ ten live rounds under the driver seat, putting the gun in the car from the rear driver side of the car" prior to the police searching the vehicle. This statement does not negate that defendant had knowledge that the gun was in the vehicle. Therefore, the affidavit does not support a claim of actual innocence.

¶ 27    In his petition, defendant states the following in regard to Jemal's statement:

> "At the time of the sentence hearing defendant's counsel had his investigator to [*sic*] obtain a written statement from Jemal Ross, who was in recovery on bed-rest at home. The written statement corroborated and supported defendants [*sic*] innocence. The court

could not allow the written statement without being notarized, as a

[*sic*] affidavit. But since then the written statement has been

notarized and signed by Jemal Ross."

¶ 28    Jemal's affidavit is not newly discovered evidence that could not have been discovered

earlier with due diligence.   Jemal's signed but unnotarized statement was not only *available*

during the trial but in fact was presented to the trial court in the posttrial motion.   It was only the

lack of notarization to make it an affidavit – the absence of which could be attributable to a lack of

due diligence by trial counsel or his investigator – that placed this earlier statement beyond the trial

court's consideration. However, even if the trial court erred in its ruling and considered the

unnotarized affidavit, it would have made no difference in the outcome of this case. It is also not

newly discovered evidence because defendant was aware of it based on Patterson's testimony. The

proposed testimony of the defendant's son is also cumulative to Patterson's testimony and again

that would not change the result.

¶ 29    For a successful claim of ineffective assistance of counsel, a defendant must demonstrate

that counsel's performance was objectively unreasonable and prejudiced the defendant.   *Tate*,

2012 IL 112214, ¶¶ 18-19.   To survive summary dismissal of a petition with an ineffectiveness

claim, it need only be arguable that counsel's performance fell below an objective standard of

reasonableness and arguable that the defendant was prejudiced thereby.   *Tate*, 2012 IL 112214,

¶ 19.

¶ 30    However, in his postconviction petition, defendant does not claim ineffective assistance of

counsel. It is his lawyers who are now telling us in defendant's brief that defendant meant from the facts that he related in his petition that his trial and appellate lawyers were ineffective. Defendant referred in his postconviction petition to counsel obtaining his son's statement from an investigation to support his claim of actual innocence. Even under the most liberal reading, defendant did not even suggest that his lawyers were ineffective, and as a result, he has waived that issue on appeal. *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006); *People v. Marquez*, 324 Ill. App. 3d 711, 723 (2001) (finding the defendant's allegation that failure to provide an interpreter deprived him of his right to confront his accusers was waived where the allegations was not in his original petition even though the defendant "did allege in his postconviction petition that an interpreter was necessary because he did not understand the English language. That allegation was raised by defendant in the context of defendant's claim that he did not voluntarily and intelligently waive his constitutional rights to trial by jury because no interpreter was provided." (Emphasis added.)).

¶ 31    Moreover, in the present case there is no reason to relax the waiver. Waiver may be relaxed where the facts on which a defendant's claim is based do not appear on the face of the trial record, or where fundamental fairness so requires, such as where the counsel who represented defendant at trial represents him on direct appeal. *People v. Tye*, 323 Ill. App. 3d 872, 879-80 (2001). Here, however, defendant's entire claim of ineffective assistance of trial counsel is based on matters that are in the record and defendant was represented on direct appeal by an attorney other than the one who represented him at trial.

¶ 32 Finally, even if defendant had alleged ineffective assistance of trial and appellate counsel in his postconviction petition, it is not arguable that either attorney was ineffective. Claims of ineffective assistance of counsel are considered under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Scott*, 2011 IL App (1st) 100122, ¶ 27 (citing *People v. Rogers*, 197 Ill. 2d 216, 223 (2001)). Under *Strickland*, a defendant must show both that counsel's performance fell below an objective standard of reasonableness and that defendant was prejudiced as a result of counsel's deficient performance. *Scott*, 2011 IL App (1st) 100122, ¶ 27. To survive summary dismissal, a defendant must show that it is arguable counsel's performance fell below an objective standard of reasonableness and that it is arguable that the defendant was prejudiced as a result. *Tate*, 2012 IL 112214, ¶ 19. At the start of this case, defendant asserted his speedy trial rights and maintained his trial demand despite the fact that his son was shot and in a coma. He could have simply withdrawn his demand and waited until his son recovered so that his son could testify, but he decided as a matter of strategy not to wait. Even if defendant thought that his son would not survive, he could have waited to see if his son would survive before proceeding with the case. Defendant acknowledged that this was a strategic decision. He cannot now say this was ineffective assistance of trial counsel.

¶ 33 "Appellate counsel is only required to raise meritorious issues on appeal ***." *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 12. Therefore, a defendant can only show he was prejudiced by appellate counsel's failure to raise an issue on appeal if the underlying issue has merit. *McGhee*, 2012 IL App (1st) 093404, ¶ 12.

¶ 34    The decision whether to call a witness or request a continuance is generally a matter of trial strategy, reserved to counsel's discretion. *People v. Enis*, 194 Ill. 2d 361, 378 (2000). Such decisions are usually immune from claims of ineffective assistance of counsel because they enjoy a strong presumption that they reflect sound trial strategy instead of incompetence, unless counsel's strategy was "so unsound that no meaningful adversarial testing was conducted." *Enis*, 194 Ill. 2d at 378.

¶ 35    Here, the record shows that defendant demanded trial at his arraignment. After trial, at the hearing on defendant's posttrial motion, defense counsel explained:

> "On the day of trial, Jemal Ross had been shot three or four days before that trial and he was in a coma. And there's no reason to believe he was going to come out of the coma. So there was no reason to remove our trial demand and keep my client in jail on the off chance that Jemal Ross who was shot in the face a few feet away would come out of a coma."

Counsel further stated that he had discussed the decision with defendant and that it had been part of the trial strategy. Under these circumstances, it is not arguable that counsel's trial performance fell below an objective standard.

¶ 36    Moreover, even if counsel's failure to notarize the performance fell below an objective standard, based on the record it is not even arguable that defendant was prejudiced by counsel's performance. To establish prejudice, a defendant must demonstrate that there is a reasonable

probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *People v. Manning*, 241 Ill. 2d 319, 327 (2011).

¶ 37 At trial, Patterson testified that he observed Jemal placing the gun in the vehicle; exactly what Jemal attested to in his affidavit. The trial court heard the testimony and rejected it, finding defendant guilty. In addition, Jemal is a convicted felon and his credibility as a witness is questionable. Jemal is also defendant's son and therefore a biased witness. In contrast, the State presented the testimony of the two arresting officers, neither of whom observed Patterson or Jemal at the scene. Officer Jones testified in rebuttal that only defendant and Tatum were present at the scene. Based on the testimony, even if trial counsel had notarized Jemal's statement before the posttrial motion hearing, it is not arguable that defendant would have received a new trial based on Jemal's statement and, even if he had received a new trial, it is not arguable that the result would have changed on retrial.

¶ 38 We would also note that affirming the trial court's summary dismissal of defendant's petition does not leave defendant entirely without recourse. "A defendant who fails to include an issue in his original or amended postconviction petition, although precluded from raising the issue on appeal from the petition's dismissal, may raise the issue in a successive petition if he can meet the strictures of the 'cause and prejudice test.' " (Internal quotation marks omitted.) *Jones*, 213 Ill. 2d at 508; see also *Pendleton*, 223 Ill. 2d at 476 (observing that the defendant is "of course, free to pursue any defaulted claims he believes to be of merit by filing a successive postconviction petition").

¶ 39    Here, we dispose of the MSR claim by noting that our supreme court recently rejected such a claim, holding that MSR was not imposed by the Department but by the trial court by operation of law when it imposed a sentence of imprisonment.    *People v. McChriston*, 2014 IL 115310.

¶ 40    Accordingly, we affirm the trial court's summary dismissal of defendant's postconviction petition.

¶ 41    Affirmed.