NOTICE

Decision filed 06/04/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 170153-U

NO. 5-17-0153

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 13-CF-76 |
| | ) | |
| RICHARD E. REIMAN, | ) | Honorable |
| | ) | William G. Schwartz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's summary dismissal of defendant's *pro se* postconviction petition where defendant failed to raise an arguable claim of ineffective assistance of counsel.

¶ 2    Defendant, Richard E. Reiman, appeals from an order of the circuit court of Jackson County, which summarily dismissed his *pro se* postconviction petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2016)). On appeal, defendant contends that the court erred in dismissing his petition as frivolous because he raised an arguable claim that trial counsel was ineffective for failing to investigate and present the defense of involuntary intoxication, and for failing to request a fitness hearing. For the following reasons, we affirm the court's order dismissing defendant's *pro se* postconviction petition.

1

¶ 3                                    I. Background

¶ 4     Defendant does not deny that he committed the four offenses for which he stands convicted, as detailed below, but he claims on appeal that he received ineffective assistance of counsel at trial because his prescribed use of Cymbalta rendered his criminal acts involuntary and further rendered him unfit to stand trial. We, therefore, recite only the facts necessary to decide this appeal.

¶ 5     On March 7, 2013, a grand jury returned a seven-count indictment[1] against defendant relating to events that occurred on February 12, 2013. Defendant was charged with two counts of home invasion, one count of aggravated unlawful restraint, two counts of aggravated kidnapping (listing differing theories), and one count each of domestic battery and violation of an order of protection. Following a subsequent hearing on a motion to dismiss filed by defendant, the circuit court dismissed the two counts of aggravated kidnapping.

¶ 6     On August 14, 2013, defendant filed a motion to suppress evidence. Defendant requested that the circuit court enter an order suppressing recordings of telephone calls made by defendant from the Jackson County jail. In support of the motion, defendant attached a memorandum of law.

¶ 7     On October 3, 2013, defendant was arrested on a felony charge of criminal damage to property. At that time, jail staff noted that defendant was "alert & oriented x3, mood—stable, not overly nervous or uptight, affect acceptable." Defendant subsequently surrendered his bond in the present case and remained in custody.

¶ 8     On November 4, 2013, the circuit court conducted a hearing on defendant's motion to suppress. Defendant, among others, testified at that hearing. Defendant stated his name, address,

---

[1]The State initially charged defendant by amended information with the same offenses. Defendant was taken into custody on February 13, 2013, and later released on bail on March 2, 2013.

and age. He recalled that detectives attempted to interview him following his arrest at the Murphysboro Dairy Queen, but he invoked his right to counsel. He was able to recall the date of his previous arrest. He testified that he made phone calls from the jail and each time a recording came on that notified him that the calls were being monitored. He called his attorney and could recall that he had been informed the call would not be recorded. He further testified that he was emotional, depressed, and scared following his arrest. Even though defendant testified that he was not thinking clearly, he clarified that he was overwhelmed because "it's a lot on me." The circuit court later issued an order denying the motion.

¶ 9 Following a four-day jury trial beginning on January 21, 2014, defendant was convicted of four of the five counts—home invasion, aggravated unlawful restraint, domestic battery, and violation of order of protection—and acquitted of the second count of home invasion. Prior to sentencing, the circuit court received the presentence investigation report (PSI), which contained, *inter alia*, defendant's medical records. A medical record from October 28, 2009, revealed that defendant was prescribed Cymbalta to treat type I diabetes, and "[t]he side effects were discussed." The circuit court later sentenced defendant to concurrent prison sentences of 18 years for home invasion and 5 years for aggravated unlawful restraint. The court also sentenced defendant to concurrent jail sentences of 364 days for domestic battery and 364 days for violation of an order of protection.

¶ 10 On February 21, 2014, defendant filed a motion for new trial, arguing numerous errors occurred at trial. In his last claim of error, defendant alleged that a particular juror's family member had previous dealings with defendant, "which may have affected the juror's ability to be fair and impartial." Defendant attached an affidavit, attesting to the nature of the prior dealings

and the reasons he believed the prior dealings may have influenced that particular juror. The circuit court later denied the motion for new trial following a hearing on March 28, 2014.

¶ 11 On April 22, 2014, defendant filed a direct appeal in this court, which was dismissed at defendant's request on October 2, 2015. Approximately 18 months later, on March 27, 2017, defendant filed a *pro se* postconviction petition in the circuit court, claiming, *inter alia*, that his trial counsel was ineffective for failing to investigate and present the defense of involuntary intoxication, and for failing to request a fitness hearing before trial. In support, defendant alleged that he was taking a prescribed medication, Cymbalta, at the time he committed the offenses and at the time of trial. Defendant further alleged that, due to the adverse side effects associated with the use of Cymbalta, he had a complete inability to appreciate the wrongfulness of his conduct at the time of the offenses, and to understand the nature of the proceedings at trial.

¶ 12 Defendant supported his petition by attaching pharmaceutical records documenting his prescription refills for Cymbalta, from April 27, 2012, to November 25, 2013. Defendant also attached a purported list of Cymbalta's possible side effects, which included suicidal thoughts, mild mania, "aggressive behavior," confusion, mood changes, and being "easily angered and annoyed." Defendant also attached a medical report, dated April 23, 2013, verifying he had been prescribed a continuing regimen of Cymbalta, combined with gabapentin (Neurontin), as treatment for peripheral neuropathy associated with diabetes. In addition, defendant attested to the truthfulness of facts alleged in his *pro se* postconviction petition. Specifically, he attested that he informed trial counsel that he had taken the prescribed Cymbalta and consumed alcohol on the date of the offense. Lastly, defendant stressed that he "does not fit the mold of a criminal being a hard working [*sic*], respected man with many friends testifying about his kind heart," and he "had never before been involved in criminal behavior."

¶ 13 On March 27, 2017, following a hearing, the circuit court summarily dismissed the petition as frivolous. This appeal followed.

¶ 14                                         II. Analysis

¶ 15 On appeal, defendant contends that the circuit court erred in summarily dismissing his petition because he raised *arguably* meritorious claims of ineffective assistance of trial counsel based on counsel's failure to (1) investigate the adverse side effects of Cymbalta and present a defense of involuntary intoxication and (2) request a fitness examination based on defendant's use of Cymbalta. Defendant further contends that these claims are "plainly" supported and his petition, therefore, should have advanced to a second-stage hearing.

¶ 16 The Act provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Postconviction proceedings may consist of up to three stages in noncapital penalty cases. *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006).

¶ 17 The case at bar involves a first-stage summary dismissal of a postconviction petition. At the first stage, the circuit court must, independently and without considering any argument by the State, determine whether the petition is "frivolous or is patently without merit" (*i.e.*, that it has no arguable basis in law or fact). 725 ILCS 5/122-2.1(a)(2) (West 2016); *Hodges*, 234 Ill. 2d at 16. To survive a summary dismissal, the postconviction petition need only present "the gist of a constitutional claim," which is "a low threshold." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). In making its determination, the court must both accept as true and liberally construe all of the allegations in the petition unless contradicted by the record. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A "bare allegation" of a constitutional deprivation does not qualify as the gist of

a constitutional claim. *People v. Prier*, 245 Ill. App. 3d 1037, 1040 (1993). "A petition lacks an arguable basis in law or fact if it is 'based on an indisputably meritless legal theory,' such as one that is 'completely contradicted by the record,' or 'a fanciful allegation,' including 'those which are fantastic or delusional.' " *People v. Scott*, 2011 IL App (1st) 100122, ¶ 22 (quoting *Hodges*, 234 Ill. 2d at 16-17).

¶ 18    Normally, claims of ineffective assistance of counsel are analyzed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *Hodges*, 234 Ill. 2d at 17. Under that standard, a defendant must show both that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.  If a defendant fails to establish that he was arguably prejudiced under the second prong of the test, a reviewing court need not consider whether counsel's performance arguably fell below an objective standard of reasonableness. *People v. Youngblood*, 389 Ill. App. 3d 209, 214 (2009).

¶ 19    Combining the standards in *Strickland* and *Hodges*, as highlighted above, a postconviction petition that alleges ineffective assistance of counsel may not be summarily dismissed if "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. In simpler terms, at the first stage proceeding, a defendant need only make an arguable claim that counsel's representation was deficient, and that the outcome of his case would have been different absent the deficient representation. *Id.* This "arguable" test demonstrates that ineffective assistance of counsel claims at the first stage of the postconviction proceedings are judged by a lower pleading standard than at the second stage. *People v. Tate*, 2012 IL 112214, ¶ 20.

6

¶ 20 We review the summary dismissal of a postconviction petition *de novo. Id.* ¶ 10. *De novo* review shows no deference to the postconviction court's judgment or reasoning. *People v. Vincent*, 226 Ill. 2d 1, 14 (2007). With these standards in mind, we turn our attention to defendant's two postconviction claims of ineffective assistance of counsel.

¶ 21                                    A. Involuntary Intoxication

¶ 22 Defendant first claims that his trial counsel was arguably ineffective because he failed to investigate the adverse side effects of Cymbalta and present an affirmative defense of involuntary intoxication. The State does not address whether trial counsel's performance arguably fell below an objective standard of reasonableness. Instead, the State argues that dismissal was proper because defendant's petition failed to allege facts showing that he was arguably prejudiced by trial counsel's failure to present an affirmative defense of voluntary intoxication. We agree with the State.

¶ 23 Section 6-3 of the Criminal Code of 2012 (Code), titled "Intoxicated or drugged condition," provides as follows:

> "A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 720 ILCS 5/6-3 (West 2016).

Additionally, the Illinois Supreme Court has recognized that a defendant is involuntarily intoxicated, within the meaning of section 6-3 of the Code, where the individual's condition results from an unexpected and unwarned adverse side effect of a prescription drug taken on a doctor's orders. *People v. Hari*, 218 Ill. 2d 275, 294-95 (2006). In *Hari*, our supreme court, in defining the term "involuntary," relied on its commonly understood meaning—" 'as springing

7

from accident or impulse rather than conscious exercise of the will' " and " '[n]ot resulting from a free and unrestrained choice; not subject to control by the will.' " *Id.* at 292-93 (quoting Webster's Third New International Dictionary 1191 (1993) and Black's Law Dictionary 833 (7th ed. 1999)).

¶ 24   In the present case, defendant failed to show in his petition that he was arguably prejudiced by trial counsel's failure to investigate and present the defense of involuntary intoxication. Specifically, defendant failed to demonstrate a reasonable probability that a jury would have acquitted him based on a defense of involuntary intoxication. While we accept as true defendant's claims that he took Cymbalta before he committed the offenses and that Cymbalta has been associated with various adverse side effects, we find the record contradicts his claim that Cymbalta's adverse side effects deprived him of a substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Hence, we need not accept this claim as true. *Edwards*, 197 Ill. 2d at 244.

¶ 25   Defendant's own supporting documents indicate that his Cymbalta use began in 2012, nearly a year before he committed the offenses in February 2013. However, the record shows that defendant began taking Cymbalta, and was aware of the possible adverse effects, in 2009— well before he committed the offenses. Moreover, defendant's supporting documents establish that he visited his prescribing physician on April 23, 2013, approximately two months after committing the offenses, and he did not report any adverse side effects. In fact, defendant continued to have his prescriptions filled through November 2013. Defendant did not report, nor did he claim, that he had encountered adverse side effects until he filed his petition more than three years after he committed the offenses. Lastly, during this same time period, in October 2013, defendant was arrested and observed by jail staff as "alert & oriented x3, mood—stable,

not overly nervous or uptight, affect acceptable." Thus, it is clear from the record that defendant's claim that he had a complete inability to appreciate the wrongfulness of his conduct at the time of the offenses due to adverse side effects from Cymbalta has no arguable basis in fact.

¶ 26    Defendant claims that he showed his actions in committing the offenses were out of character. Defendant notes that he admitted the offenses "took place," and that he presented evidence showing he had no prior criminal behavior and was a hard-working, respected man with a kind heart. However, this showing does not support his claim that adverse side effects from Cymbalta, a medication he had taken for nearly a year before he committed the offenses, caused him to have a complete inability to appreciate the wrongfulness of his conduct. Under these circumstances, favorable character evidence presented at trial is insignificant in our view.

¶ 27    Because defendant failed to demonstrate a reasonable probability that a jury would have acquitted him based on a defense of involuntary intoxication, he cannot show that he was arguably prejudiced by trial counsel's failure to investigate and present the defense. Thus, we conclude that defendant failed to attach to his petition sufficient evidence in support of this claim of ineffective assistance of counsel (see section 122-2 of the Code of Criminal Procedure of 1963 (725 ILCS 5/122-2 (West 2016) ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."))). We now consider defendant's second claim of ineffective assistance of counsel.

¶ 28                            B. Fitness to Stand Trial

¶ 29    Defendant next claims that his trial counsel was ineffective by failing to request a fitness hearing. In response, the State first contends that dismissal was proper because it is not arguable that there is a reasonable probability that the circuit court would have found defendant unfit.

9

Alternatively, the State contends that it is not arguable that the court would have even ordered a fitness hearing. In any event, the State again asserts that defendant cannot show prejudice. Again, we agree with the State.

¶ 30    Under section 104-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-10 (West 2016)), a defendant is presumed fit to stand trial. If a *bona fide* doubt is raised regarding a defendant's fitness, the circuit court must order a fitness hearing. *Id.* § 104-11(a). A defendant is unfit to stand trial if, due to a mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings or to assist in the defense. *Id.* § 104-10. In assessing whether a *bona fide* doubt of fitness exists, a number of factors may be considered, including a defendant's irrational behavior, his demeanor at trial, any prior medical opinion on the defendant's competence, and any representations by defense counsel on the defendant's competence. *People v. Brown*, 236 Ill. 2d 175, 186 (2010). Similarly, matters admissible at the fitness hearing include:

"(1) The defendant's knowledge and understanding of the charge, the proceedings, the consequences of a plea, judgment or sentence, and the functions of the participants in the trial process;

(2) The defendant's ability to observe, recollect and relate occurrences, especially those concerning the incidents alleged, and to communicate with counsel;

(3) The defendant's social behavior and abilities; orientation as to time and place; recognition of persons, places and things; and performance of motor processes." 725 ILCS 5/104-16(b) (West 2016).

¶ 31    In the case at bar, defendant claimed that he informed trial counsel of his use of Cymbalta prior to trial. Defendant further claimed that Cymbalta's adverse side effects "impaired [his]

ability to understand the nature and purpose of [the] proceeding." We find the record, taken as a whole, disproves this latter claim.

¶ 32    In viewing the record, we find no meaningful facts giving rise to a *bona fide* doubt as to defendant's fitness to stand trial. Contrary to defendant's claim, defendant's testimony at the suppression hearing, alone, affirmatively demonstrates defendant's ability to understand the proceedings and to assist in his defense. The transcript reveals that defendant displayed no irrational behavior or delusional thinking and was able to cogently answer all questions. Defendant stated his name, address, and age. He recalled that detectives attempted to interview him following his arrest at the Murphysboro Dairy Queen, but he invoked his right to counsel. He was able to recall the date of his previous arrest. He testified that he made phone calls from the jail and each time a recording came on that notified him that the calls were being monitored. He called his attorney and could recall that he had been informed that the call would not be recorded. He further testified that he was emotional, depressed, and scared following his arrest. Even though defendant testified that he was not thinking clearly, he clarified that he was overwhelmed because "it's a lot on me."

¶ 33    In addition to defendant's testimony, we also find it significant that defendant filed an affidavit in support of his motion for new trial shortly after the trial. In that affidavit, defendant attested to detailed facts for the purpose of demonstrating bias on the part of a particular juror. Defendant's ability to raise this claim of error, and to recite detailed facts in support, further refutes defendant's claim that he lacked the ability to understand the nature and purpose of the proceeding.

¶ 34    Based on the foregoing, we conclude, as did the circuit court, that defendant's petition has no merit, where defendant failed to meet his burden of demonstrating that it is arguable that

11

he was prejudiced by his counsel's deficient performance. As such, defendant's petition fails to state the gist of a constitutional claim and the court's summary dismissal of defendant's petition was proper.

¶ 35                                III. Conclusion

¶ 36    For the foregoing reasons, we affirm the circuit court's judgment summarily dismissing defendant's petition as frivolous.


¶ 37    Affirmed.